# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

Place an "X" in the appropriate box (required):  ☐ Green Bay Division   ☐ Milwaukee Division

## I. (a) PLAINTIFFS

## DEFENDANTS

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
     Plaintiff

☐ 2  U.S. Government
     Defendant

☐ 3 Federal Question
     *(U.S. Government Not a Party)*

☐ 4 Diversity
     *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                    *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*                                Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application ☐ 465 Other Immigration Actions | | |
| | ☐ 448 Education | ☐ 550 Civil Rights ☐ 555 Prison Condition ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☐ 1 Original
     Proceeding

☐ 2 Removed from
     State Court

☐ 3 Remanded from
     Appellate Court

☐ 4 Reinstated or
     Reopened

☐ 5 Transferred from
     Another District
     *(specify)*

☐ 6 Multidistrict
     Litigation -
     Transfer

☐ 8 Multidistrict
     Litigation -
     Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION**
   UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:

**JURY DEMAND:**  ☐ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See updated instructions):*

JUDGE _____

DOCKET NUMBER _____

DATE _____

SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

  **(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

  **(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked**. (See Section III below; NOTE: federal question actions take precedence over diversity cases.)**

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: <u>Nature of Suit Code Descriptions.</u>

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket. **PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending and previously filed cases, if any. If there are related cases, insert the docket numbers and the corresponding judge names for such cases and file a Notice of Related Action pursuant to Civil L.R. 3(b).

**Date and Attorney Signature.** Date and sign the civil cover sheet.

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

Russo Trading Company, Inc.,

        Plaintiff,

    v.                                     Case No. 26-cv-221

Q.E.P. Co, Inc.,

        Defendant.

## COMPLAINT

Plaintiff Russo Trading Company, Inc. ("Russo Trading"), for its complaint against Q.E.P. Co., Inc. ("QEP"), alleges the following:

### NATURE OF ACTION

1.     This is a civil action for breaches of contract, trade secret misappropriation under the Wisconsin's Uniform Trade Secrets Act, Wis. Stat. § 134.90, and patent infringement under the Patent Act, 35 U.S.C. §§ 1 *et seq*, arising from QEP's breach of two non-disclosure agreements, misuse of Russo Trading's confidential and trade secret information and QEP's acts of willful infringement, including the making, using, selling, and/or offering for sale products that infringe upon the claims of U.S. Patent No. 9,322,185 ("the '185 Patent") and reissued U.S. Design Patent RE49,567 ("the '567 Reissue Patent").

### PARTIES

2.     Plaintiff Russo Trading is a Wisconsin corporation with its principal place of business at N57 W13282 Carmen Avenue, Menomonee Falls, WI 53051. Among other things,

Russo Trading is engaged in the business of manufacturing, designing, and selling tile lippage removal systems.

3.      Upon information and belief, QEP is a Delaware corporation with a principal place of business at 1001 Broken Sound Pkwy NW A, Boca Raton, FL 33487.

## JURISDICTION AND VENUE

4.      This District Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (federal question) and 1338(a) (actions arising under Acts of Congress relating to patents and copyrights). As expressly agreed to by the parties, this District Court also has exclusive jurisdiction over any dispute "arising under or related to" the subject matter of a non-disclosure agreement between the parties. (Exhibit A, "2021 NDA" ¶ 11). Pursuant to the 2021 NDA, the parties discussed a supply agreement that, *inter alia*, included QEP's purchase of products covered by Russo Trading's patents and the licensing and marking of such products under Russo Trading's patents, including the patents QEP is now willfully infringing. Because QEP's willful infringement of Russo Trading's patents arises under and relates to the subject matter contemplated by the 2021 NDA, this Court has exclusive jurisdiction over this dispute. In executing and agreeing to the 2021 NDA, the parties expressly waived any objections to personal jurisdiction or venue. (Ex. A ¶ 11).

5.      Venue in this District Court is proper.  Pursuant to the 2021 NDA the parties agreed that this District Court would be the venue for any dispute "arising under or related to" the subject matter of the 2021 NDA. Because QEP's willful infringement of Russo Trading's patents arises under and relates to the subject matter contemplated by the 2021 NDA, this Court has exclusive venue over this dispute. In executing and agreeing to the 2021 NDA, the parties expressly waived any objections to personal jurisdiction or venue. (Ex. A ¶ 11).

## BACKGROUND

### I. Russo Trading's Business and Intellectual Property

6.  Russo Trading Company was founded in 1999 in Brookfield, Wisconsin.

7.  In addition to selling equipment and accessories for the tile industry, Russo Trading develops and manufactures products (including products manufactured for it by other companies according to Russo Trading specifications) for use in the tile and stone installation industry.

8.  One area in which Russo Trading has developed new and innovative products is in the field of tile lippage.

9.  When installing tile, it is generally desired that the installed tile form a uniform surface without variations caused by tiles that are noticeably higher or lower than neighboring tiles and/or tipped in such a way that one or more edges of any tile is noticeably higher or lower than the edges of its neighboring tiles. When there is a noticeable height difference between one or more tiles and/or the edges of one or more tiles with respect to adjacent tiles, this condition is referred to as "lippage" or "tile lippage." To improve the cosmetic appearance of installed tile and/or to remove trip hazards or other undesirable results of tile lippage, those who install tile aim to reduce or eliminate tile lippage as much as possible. The issue of tile lippage can become particularly pronounced when installing large format tiles (e.g., tiles having a dimension of 3 inches or greater) as minor irregularities in the substrate surface can cause angular displacements which create a large mismatch (i.e., lippage) between adjacent tiles.

10. At least as early as 2014, Russo Trading invented a system for eliminating tile lippage, which was commercialized as the "Spin Doctor® Tile Lippage Control System."

11. The Spin Doctor® Tile Lippage Control System consists of two main pieces: (1) a red Spin Doctor® Free Spin Cap; and (2) a Spin Doctor® Threaded Spacer Post (available in

3

different spacer thicknesses, having different colors); it may include an optional third part, the Clear View Shield:



**Spin Doctor® Free Spin Cap**



**Exemplar Spin Doctor® Threaded Spacer Post**



**Clear View Shield (shown with a Spin Doctor® Threaded Spacer Post)**

12.     To use the Spin Doctor® Tile Lippage Control System, an installer places the Threaded Spacer Post underneath and in between the tiles being installed, with a thickness of the Threaded Spacer Post used to set the spacing between tiles (often referred to as a "grout line") and to ensure uniform spacing. If the installer is using the Clear View Shield, he or she then places the Clear View Shield onto the Threaded Spacer Post, which more evenly distributes vertical pressure on tiles to be levelled. The installer then places the Free Spin Cap onto the Threaded Spacer Post

4

Base and spins it down to the tile surface. The installer then tightens the Free Spin Cap to align the tiles and eliminate tile lippage. When a Clear View Shield is used the effort to tighten the Free Spin Cap is reduced because the base of the Free Spin Cap does not drag on the top surface of the tiles to be leveled. In addition, use of a Clear View Shield prevents damage to the top surface of the tiles being laid – e.g., scratches or smearing of cement or adhesive across the top surface of the tiles. The windows provided in the Free Spin Cap and general transparency of the Clear View Shield allow a tile installer to view the spacing between two tiles as they are being aligned and levelled. A video showing how the Spin Doctor® Tile Lippage Control System is used during the installation of tile, to level and eliminate lippage between adjacent tiles, is available at https://www.youtube.com/watch?v=1zxgJAhImlc, last visited Nov. 14, 2025.

13.    Beginning in 2015, William P. Russo, the President of Russo Trading and the inventor of the system described above, submitted multiple patent applications related to the system described above.

14.    On May 21, 2015, Mr. Russo filed a utility patent application titled "Tile Lippage Removal System" that was granted and issued by the U.S. Patent and Trademark Office on April 26, 2016 as the '185 Patent (Exhibit B). Mr. Russo assigned the '185 Patent to Russo Trading Company, Inc. on January 30, 2018. The '185 Patent includes 18 claims directed to tile lippage removal systems.

15.    On August 31, 2017, Mr. Russo filed a design patent application titled "Tile Lippage Threaded Post," which was subsequently granted and issued by the U.S. Patent and Trademark Office as U.S. Design Patent No. D856,111 on August 13, 2019. On August 11, 2021 he filed a request for reissuance on the U.S. Design Patent No. D856,111, which was subsequently granted and issued by the U.S. Patent and Trademark Office as the '567 Reissue Patent on July 4,

2023. (Exhibit C). The '567 Reissue Patent claims priority to the application filed on May 21, 2015 that issued as the '185 Patent. The '567 Reissue Patent is assigned to Russo Trading Company and includes a single claim directed to the ornamental design for a tile lippage threaded post as shown and described in the '567 Reissue Patent.

16.     Beginning in 2016, Russo Trading began advertising and selling its Spin Doctor® Tile Lippage Control System and has continuously advertised and sold the Spin Doctor® Tile Lippage Control System since that time. The Spin Doctor® Tile Lippage Control System is well-known in the tile industry and regarded by tile installers as the industry standard for ease of use and performance in tile-levelling and lippage removal. As a result, Russo Trading has had significant commercial success with the Spin Doctor® Tile Lippage Control System and has sold hundreds-of-millions of components of that system worth tens-of-millions of dollars.

17.     The success of the Spin Doctor® Tile Lippage Control System is attributable to the patented attributes of that system, including those claimed by the '185 Patent, that among other aspects allow for efficient leveling and aligning of adjacent tiles by providing downward pressure on those tiles without marring the surface of the tiles and allow an installer to observe and monitor the alignment and spacing of adjacent tiles as they are levelled, so that any misalignment can be corrected before the tile is permanently set. In comparison to other systems used to level tiles, including, for example, wedge-type and ratchet-type systems, which lock in place and cannot be adjusted once set, the Spin Doctor® Tile Lippage Control System allows an installer to easily correct any identified errors in the alignment and spacing of adjacent tiles.

18.     The Spin Doctor® Tile Lippage Control System has unique patent protected aesthetic and ornamental aspects that are the subject of several of Russo Trading's patents, including the '567 Reissue Patent. Based on Russo Trading's commercial success and volume of

sales of products embodying the claimed ornamental aspects of Russo Trading's patents, including the '567 Reissue Patent, the patent protected aesthetic and ornamental aspects of the Spin Doctor® Tile Lippage Control System are associated with the quality, proven performance, and superior function of that system.

19.     Several companies have attempted to copy the success of Spin Doctor® Tile Lippage Control System with competing systems, but none have achieved the commercial success of the Spin Doctor® Tile Lippage Control System because they lack the patented attributes of the Spin Doctor® Tile Lippage Control System, including those attributes claimed by the '185 Patent.

20.     Russo Trading has, at significant expense, enforced its patents through cease-and-desist notices and litigation. Competing companies have either taken a royalty bearing license under Russo Trading's patents, withdrawn products from the market, and/or designed their products so as not to infringe upon the claims of Russo Trading's patents.

## II.     QEP Seeks License/Supply Agreement and Executes the 2021 NDA

21.     QEP is a manufacturer and seller of tools for tile industry.

22.     QEP contacted Russo Trading to inquire about having Russo Trading manufacture spin-type leveling devices embodying the patented features of the Russo Trading Spin Doctor® Leveling System under private label for QEP.

23.      In furtherance of such discussions, the parties executed a non-disclosure agreement having an effective date of July 12, 2021, the aforementioned 2021 NDA. The 2021 NDA was signed on behalf of QEP by its Chief Legal and Administrative Officer, Mr. Adam Morgan and is attached hereto as Exhibit A.

24.     As recited in the 2021 NDA, in order to facilitate the discussion of a proposed "business, licensing and/or supply agreement concerning the distribution and sale of tile leveling/lippage removal devices supplied by [Russo Trading]" referred to as a "('Proposed Supply

7

Agreement')" the parties agreed that "any and all information regarding the Proposed Supply Agreement, including, without limitation, designs of and sample tile leveling/lippage removal devices, pricing and distribution plans and strategies, the existence and content of discussions between the Parties, draft or proposed terms and correspondence (collectively referred to as 'Confidential Information') be maintained as confidential." (Exhibit A).

25.     As further recited in the 2021 NDA, the parties agreed to not "disclose the Confidential Information to any third parties, excluding the legal representatives of the Parties" and "to limit their respective use of the Confidential Information solely for the purpose of discussing and potentially forming a business, licensing and/or supply relationship between the Parties, and shall not use the Confidential Information for any other purpose." (Exhibit A).

26.     Following execution of the 2021 NDA, Russo Trading and QEP discussed details of different licensing and supply agreements under which Russo Trading would produce a private-label version of its Spin Doctor® Tile Lippage Control System for QEP. In connection with these discussions, Russo Trading provided QEP with detailed confidential information. As part of these discussions, Russo Trading and QEP exchanged draft supply and licensing agreements that specifically identified patents assigned to Russo Trading having claims that cover and relate to the spin-type tile leveling systems and for which QEP sought a license under. In addition, the supply and licensing agreements discussed and specified particular sales and distribution channels for QEP and reserved other particular sales and distribution channels for Russo Trading.

27.     In or around late 2021/early 2022, QEP began ordering from Russo Trading versions of the components of Russo Trading's Spin Doctor® Tile Lippage Control System for QEP to sell through its existing sales and distribution channels as the private-label Lash® 360 Tile Leveling System. To distinguish the cap Russo sold to QEP from the red cap Russo sold itself

under the Spin Doctor® trademark, Russo sold QEP a yellow version of its Spin Doctor® Free Spin Cap. Russo also sold QEP tile leveling and spacing posts to complete the spin-type tile leveling system QEP marketed and sold as the Lash® 360 Tile Leveling System.

28.     Ultimately, the parties never reached agreement on a formal supply and licensing agreement. Instead, QEP placed hundreds of purchase orders with Russo Trading for the various component parts used in the private label version of Russo Trading's Spin Doctor® Tile Lippage Control System made by Russo Trading (including by its vendors and suppliers) for QEP. QEP ultimately placed cumulative orders with Russo Trading for millions of component parts of the private label version of Russo Trading's Spin Doctor® Tile Lippage Control System that were fulfilled by Russo Trading. QEP's orders with Russo Trading for the private label version of Russo Trading's Spin Doctor® Tile Lippage Control System had a total value of several million dollars.

## III.    QEP Expresses Interest In Purchasing Russo Trading, Executes the 2023 NDA, And Requests and Receives Additional Confidential and Trade Secret Information.

29.     In or about May 2023, QEP expressed interest in purchasing Russo Trading.

30.     In connection with QEP's express interest in purchasing Russo Trading, QEP executed and entered into another non-disclosure agreement, the 2023 NDA, attached hereto as Exhibit D.  Mr. Enos Brown, QEP's Chief Financial Officer executed the 2023 NDA on May 4, 2023 on behalf of QEP.

31.     In relevant part, the 2023 NDA states that as the "Buyer" QEP "desires to receive information regarding the Business [Russo Trading, identified by the alias "Project Ringo"] to evaluate potential purchase of the Business." (Exhibit D). Under the 2023 NDA QEP "agree[d] that neither [it] nor any of its Representatives shall use or permit use of Information . . . for any purpose other than for [it] to evaluate the possible acquisition of the Business." (Exhibit D ¶ 1).

QEP further "agree[d] to use commercially reasonable efforts to protect and safeguard all Information against unauthorized use or disclosure." (*Id.*).

32.     The 2023 NDA, in relevant part, defined "Information" to mean "any and all oral, electronic, or written data, reports, records, materials or other information relating to the Business (whether or not marked or otherwise identified as confidential or proprietary) including, without limitation, the following: product formulations and specifications, information about products under development, production know-how and processes, manufacturing techniques, equipment design and layout, product samples, research, development or business plans, actual and prospective customer and supplier names and lists, pricing, test results, information relating to sources of materials and production costs, software, business records of any kind or description and other information that would reasonably be considered confidential or proprietary given the nature of the information and the Business which [QEP] or its Representatives obtain, prior or after the Effective Date [of the 2023 NDA], directly or indirectly, from or on behalf of the Seller or Consultant or which [QEP] or its Representatives obtain (a) from any inspection, examination or other review of the books, records, machinery, devices, process, or production methods of the Business, including, without limitation, in any virtual 'data rooms' maintained for parties interested in evaluating the purchase of the Business; (b) from communications with the directors, officers, employees, agents, or representatives of the Seller, Consultant, or Business; (c) during visits to the Business's premises; or (d) through disclosure or discovery in any other manner." (Exhibit D ¶ 2).

33.     The 2023 NDA further defined "Information" to mean and include "all notes, analyses, compilations, interpretations, and other materials prepared or developed by or at the

request of [QEP] or its Representatives that reflect or are derived from (in whole or in part) any of the foregoing." (Exhibit D ¶ 2).

34.     The 2023 NDA has a term "for a period of two (2) years from the Effective Date, *provided, however*, that (a) [QEP's] *obligations herein shall remain in effect indefinitely with respect to any Information which constitutes a trade secret under applicable law*, and (b) the expiration of this Agreement shall not relieve a party of liability for breach of this Agreement prior to its expiration." (Exhibit D ¶8) (emphasis added).

35.     The 2023 NDA also states that in the event of an actual or threatened breach by the Buyer—i.e., QEP, Russo Trading, "shall be entitled to equitable relief, including an injunction and specific performance, without necessity of posting a bond." (Exhibit D ¶9). In executing the 2023 NDA, QEP also expressly agreed that Russo Trading "may recover any reasonable attorney fees and other costs which are incurred by [Russo Trading] in connection with the enforcement of" the 2023 NDA. (*Id.*).

36.     After execution of the 2023 NDA, QEP was provided with a Confidential Information Memorandum ("CIM") that detailed various aspects of Russo Trading's business. This CIM included detailed information regarding Russo Trading's financial information (including revenue and profits, sales strategies, and sales and distribution channels), historical sales and sales projections, product development process, marketing strategies, planned growth opportunities and strategies, and other valuable confidential and trade secret information regarding Russo Trading's business.

37.     Following execution of the 2023 NDA, QEP also requested additional confidential and trade secret information about Russo Trading's business in connection with its expressed interest in purchasing Russo Trading. In particular, QEP sought detailed income, balance sheet

and cash flow statements for three years; all Russo Trading's intellectual property (e.g., patents and trademarks) that would transfer with a sale; Russo Trading's litigation history; material contracts relating to Russo Trading's assets; licensing fees with any key suppliers; Russo Trading's top 25 key accounts (in ranked order); sales data (spanning multiple years) for each product sold by Russo Trading (identified by stock-keeping unit, "SKU") for each of Russo Trading's customers; revenue and margin for each SKU; identification and data regarding Russo Trading's suppliers, costs, volumes, margins and country of origin for Russo Trading's products. In short, QEP sought comprehensive and highly confidential and trade secret information regarding the products sold by Russo Trading, including its patent protected Spin Doctor® Tile Lippage Control System.

38.     Because QEP represented itself to be a buyer interested in purchasing Russo Trading and had executed the 2023 NDA, which prohibits use of information (including trade secret information) provided under that NDA for any purpose other than to evaluate the possible acquisition of Russo Trading, Russo Trading granted QEP access to a virtual data room containing dozens of documents detailing information responsive to QEP's inquires ("Virtual Data Room Data"). These documents contain significant confidential and trade secret information relating to Russo Trading's business, including, *inter alia*, detailed information and analyses regarding Russo Trading's customers and sales data, Russo Trading's patent licensing terms; Russo Trading's vendors and suppliers, profit and loss statements, and other valuable and detailed information regarding Russo Trading's business.

39.     After receiving the information Russo Trading provided, QEP submitted a non-binding Indication of lnterest ("IOI") which significantly undervalued the value of Russo Trading,

when compared to other valuations submitted by other interested buyers. This ended any further acquisition negotiations between Russo and QEP.

40. Upon information and belief, QEP represented that it was a buyer interested in purchasing Russo Trading so that it could obtain access to Russo Trading's confidential and trade secret information.

41. Russo Trading would not have provided Russo Trading's confidential and trade secret information, including through the CIM or access to the Virtual Data Room Data to QEP if QEP had not initially represented that it was a bona fide interested buyer of Russo Trading.

## IV. QEP Misappropriates Russo Trading's Confidential and Trade Secret Information and Willfully Infringes Russo Trading's Patents.

42. On or about April 8, 2025, QEP's Vice President of Global Product Innovation, Mr. Brad Miller, contacted Russo Trading's President, founder and owner Mr. William Russo and informed Mr. Russo that QEP would no longer be purchasing the private label version of Russo Trading's Spin Doctor® Tile Lippage Control System from Russo Trading for sale as the QEP Lash® 360 Tile Leveling System. During this conversation, Mr. Miller further stated that QEP would be manufacturing its own components for its Lash® 360 Tile Leveling System. Mr. Miller also stated that QEP was aware of Russo Trading's patents relevant to spin-type levelling systems, but QEP was proceeding nonetheless to manufacture, offer for sale, and sell a version of the Lash® 360 Tile Leveling System without authorization or license from Russo Trading under Russo Trading's relevant patents, which include the '185 Patents and the '567 Reissue Patent.

43. No later than in the fall of 2025, QEP launched a revised version of the Lash® 360 Tile Leveling System, by making, offering for sale and selling that system and components thereof, without approval or license from Russo Trading.

44.     QEP's revised version of the Lash® 360 Tile Leveling System includes substantially similar components to the patented components of Russo Trading's Spin Doctor® Tile Lippage Control System. As shown in an official QEP video posted on YouTube System (video still reproduced below), QEP's Lash® 360 Tile Leveling includes a spin cap and spacer post like the cap and spacer post of Russo Trading's Spin Doctor® Tile Lippage Control System.



QEP revised Lash® 360 Tile Leveling System as shown in a video on YouTube. https://www.youtube.com/watch?v=lnqQrAD5wwE; last visited Nov. 8, 2025.

45.     QEP recommends that users of the revised Lash® 360 Tile Leveling System further use QEP's Tile Leveling System Protection Plate with that system "to protect soft tile and marble surfaces from possible scratches caused by trapped residual mortar during tightening." https://www.youtube.com/watch?v=lnqQrAD5wwE; last visited Nov. 8, 2025.

46.     As detailed in the infringement claim chart attached hereto as Exhibit E, QEP's revised Lash® 360 Tile Leveling System literally infringes each and every limitation of Claims 1-

18 of the '185 Patent.

47.     As also detailed in the infringement claim chart attached here to as Exhibit F, the spacer post of QEP's revised Lash® 360 Tile Leveling System has a substantially similar appearance to the ornamental design claimed by the '567 Reissue Patent.

48.     Upon information and belief, QEP based its decisions to suspend its purchases of the private label Lash® 360 Tile Leveling System from Russo Trading, manufacture its own components for its Lash® 360 Tile Leveling System based, at least in part, on the confidential and trade secret information Russo Trading shared with QEP under the 2021 NDA and the 2023 NDA.

49.     Upon information and belief, QEP based its decisions to infringe Russo Trading's '185 Patent and '567 Reissue Patent based, at least in part, on confidential and trade secret information Russo Trading shared with QEP under the 2021 NDA and the 2023 NDA.

50.     Upon information and belief, QEP specifically marketed its revised version of the Lash® 360 Tile Leveling System to retailers and distributors that Russo Trading identified and shared with QEP under the 2021 NDA as retailers and distributors that Russo Trading was unwilling to supply products to or license QEP to sell to under Russo Trading's patents.

51.     A QEP sales representative told a Russo Trading customer that Russo Trading was no longer making the Spin Doctor® Tile Lippage Control System and that the only company selling a spin-type leveling system was QEP.

52.     Upon information and belief, QEP specifically marketed its revised version of the Lash® 360 Tile Leveling System to retailers and distributors that Russo Trading identified and shared with QEP in confidence under the 2023 NDA as customers, distributors, and resellers of Russo Trading's products including the Spin Doctor® Tile Lippage Control System.

53.     Upon information and belief, QEP used information Russo Trading provided to it

in confidence as confidential and trade secret information under the 2021 NDA and the 2023 NDA to successfully market its competing and infringing Lash® 360 Tile Leveling System to one or more of the retailers and distributors that Russo Trading identified to QEP in connection with business discussion held pursuant to the 2021 NDA or the 2023 NDA resulting in the one or more of the retailers and distributors no longer purchasing Russo Trading's patent protected Spin Doctor® Tile Lippage Control System, with such retailers and distributors instead purchasing QEP's revised Lash® 360 Tile Leveling System.

54.     Upon information and belief, QEP has used and is using Russo Trading's confidential, trade secret, and commercially sensitive and valuable information regarding product pricing, margin, sales channels, and strategies, shared with QEP subject to the terms of the 2021 NDA and 2023 NDA to gain a competitive commercial advantage over Russo Trading.

55.     QEP has violated the terms of the 2021 NDA and the 2023 NDA by improperly using confidential, trade secret, and commercially valuable information that Russo Trading shared with it under those NDAs for unauthorized purposes—namely for QEP's business purposes and gains at Russo Trading's expense and detriment.

### FIRST CAUSE OF ACTION
### (Breach of the 2021 NDA)

56.     Russo Trading restates and incorporates by reference the allegations in paragraphs 1 through 55 above.

57.     The 2021 NDA is a valid and enforceable contract.

58.     The 2021 NDA restricts use of confidential information "solely for the purpose of discussing and potentially forming a business, licensing and/or supply relationship" between Russo Trading and QEP, under which Russo Trading would supply tile leveling and lippage removal devices to QEP. (Ex. C ¶ 1 & Preamble). According to the 2021 NDA, the parties further

and expressly agreed that confidential information of the other party "shall not [be used] . . . for any other purpose." (*Id.*).

59.     Russo Trading provided confidential information to QEP under the 2021 NDA, including in order to facilitate the business, licensing, and supply relationship discussed between the parties which contemplated Russo Trading supplying QEP with patent protected tile leveling/lippage removal devices under license from Russo Trading for QEP's sale in specific sales and distribution channels.

60.     Russo Trading and QEP exchanged draft supply and licensing agreements that contemplated QEP taking a license under one or more of Russo Trading's patents and marking products sold by QEP with the appropriate Russo Trading patents.

61.     QEP never executed a formal supply or licensing agreement with Russo Trading.

62.     Despite never entering into a formal supply or licensing agreement with Russo Trading, QEP purchased millions of dollars of spin-type tile leveling components from Russo Trading. The spin-type tile leveling components purchased by QEP from Russo Trading are the subject of several Russo Trading patents, including the '185 Patent and the '567 Reissue Patent.

63.     On or about April 8, 2025, QEP informed Russo Trading that it was no longer going to purchase spin-type leveling components from Russo Trading, was going to manufacture its own spin-type leveling components to compete with Russo Trading, and was going to do so fully aware of Russo Trading's patents relating to and covering spin-type leveling systems and components thereof.

64.     Upon information and belief, QEP used confidential information Russo Trading shared with it in confidence under the 2021 NDA to contemplate, make, and reach its business decisions to: stop purchasing spin-type leveling components from Russo Trading, manufacture its

own spin-type leveling components, compete with Russo Trading by making, offering for sale and selling competing spin-type leveling components and systems, and willfully infringe Russo Trading's patent.

65. QEP's use of Russo Trading's confidential information shared under and pursuant to the terms of the 2021 NDA for its own business purposes, including to manufacture, market, and sell its own spin-type leveling components and system to compete with Russo Trading, is a material breach of the express provisions of the 2021 NDA that prohibit use of confidential information provided by Russo Trading "for any other purpose" other than "solely for the purpose of discussing and potentially forming a business, licensing and/or supply relationship between the Parties."

66. QEP's material breach of the 2021 NDA has materially and substantially damaged Russo Trading, including, without limitation, through the loss of direct sales to QEP and the loss of sales to third parties that now purchase product from QEP instead of from Russo Trading.

67. As a result of QEP's material breach of the 2021 NDA, Russo Trading has suffered and will continue to suffer irreparable harm and monetary damages in an amount to be determined at trial, but in no event less than its lost profits, together with interest and costs as fixed by the Court.

68. Upon information and belief, QEP will continue to wrongly profit and be unjustly enriched from its material breach of the 2021 NDA unless and until it is enjoined by a court.

## SECOND CAUSE OF ACTION
### (Breach of the 2023 NDA)

69. Russo Trading restates and incorporates by reference the allegations in paragraphs 1 through 68 above.

70. The 2023 NDA is a valid and enforceable contract.

71.     Under the 2023 NDA QEP "agree[d] that neither [it] nor any of its Representatives shall use or permit use of Information . . . for any purpose other than for [it] to evaluate the possible acquisition of the Business."

72.     Under the 2023 NDA, "Information" includes "any and all oral, electronic or written data, reports, records, materials or other information relating to" Russo Trading, including for example, "information that would reasonably be considered confidential or proprietary given the nature of the information," "pricing" information, that is obtained from "any virtual 'data rooms'" or provided by the Seller or its Consultant.

73.     In addition, the 2023 NDA defines "Information" to include "any and all notes, analyses, compilations, interpretations, and other materials prepared or developed by or at the request of [QEP] that reflect or are derived from (in whole or in part)" from information about Russo Trading provided to QEP under the 2023 NDA. The 2023 NDA further specifies that Russo Trading "retains its entire right title and interest . . . in and to all Information."

74.     The 2023 NDA specifies that QEP's obligations under the 2023 NDA "shall remain in effect indefinitely with respect to any Information which constitutes a trade secret under applicable law." The 2023 NDA further specifies that it is to "be governed by and construed in accordance with the internal laws of the state of Wisconsin without giving effect to its conflict of law principles or rules."

75.     Following execution of the 2023 NDA, QEP requested and received confidential and trade secret information regarding Russo Trading, including detailed information regarding Russo Trading's business operation, sales, costs, and profit margin data regarding the patent protected Spin Doctor® Tile Lippage Control System made and sold by Russo Trading, licensing agreements regarding Russo Trading's patent protected Spin Doctor® Tile Lippage Control

System, and Russo Trading's primary sales and distribution channels of the Spin Doctor® Tile Lippage Control System.

76.     Russo Trading authorized QEP's access to Russo Trading's confidential and trade secret information under the 2023 NDA, based on QEP's representations that it was a genuine buyer interested in purchasing Russo Trading.

77.     After receiving the confidential and trade secret information about Russo Trading subject to the 2023 NDA, QEP submitted an IOI that significantly undervalued Russo Trading's business when compared to all other indications of interest that Russo Trading received.

78.     Upon information and belief, QEP developed and created notes, analyses, compilations, interpretations, and other materials, that reflect and/or were derived in whole or in part from Information provided by Russo Trading to QEP under the 2023 NDA, including from Russo Trading's confidential and trade secret information. Russo Trading retains the entire rights in all such notes, analyses, compilations, interpretations, and other materials created by QEP in whole or in part from Information provided by Russo Trading to QEP under the 2023 NDA.

79.     On or about April 8, 2025, during the term of the 2023 NDA, QEP informed Russo Trading that it was no longer going to purchase spin-type leveling components from Russo Trading, was going to manufacture its own spin-type leveling components to compete with Russo Trading, and was going to do so fully aware of Russo Trading's patents relating to and covering spin-type leveling systems and components thereof.

80.     Upon information and belief, QEP used confidential and trade secret information Russo Trading shared with it in confidence under the 2023 NDA to contemplate, make, and reach its business decisions to: stop purchasing spin-type leveling components from Russo Trading, manufacture its own spin-type leveling components, compete with Russo Trading by making,

offering for sale and selling competing spin-type leveling components and systems, and willfully infringe Russo Trading's patent.

81.     QEP's use of Russo Trading's confidential and trade secret information shared under and pursuant to the terms of the 2023 NDA for its own business purposes, including to manufacture, market, and sell its own spin-type leveling components and system to compete with Russo Trading, is a material breach of the express provisions of the 2023 NDA that prohibit use of Information, including Russo Trading's trade secret information provided by Russo Trading "for any other purpose other than for [QEP] to evaluate the possible acquisition of" Russo Trading.

82.     As evidenced by QEP informing Russo Trading in April 2025 of its awareness of Russo Trading's patents and intent to launch its own competing spin-type leveling system during the term of 2023 NDA, QEP's breach of the 2023 NDA and unauthorized use of Russo Trading's trade secret and confidential information was willful and deliberate.

83.     QEP's material breach of the 2023 NDA has materially and substantially damaged Russo Trading, including, without limitation, through the loss of direct sales to QEP and the loss of sales to third parties that now purchase product from QEP instead of from Russo Trading.

84.     As a result of QEP's material breach of the 2023 NDA, Russo Trading has suffered and will continue to suffer irreparable harm and monetary damages in an amount to be determined at trial, but in no event less than its lost profits, together with interest and costs as fixed by the Court.

85.     Upon information and belief, QEP will continue to wrongly profit and be unjustly enriched from its material breach of the 2023 NDA unless and until it is enjoined by a court.

## THIRD CAUSE OF ACTION
## (Trade Secret Misappropriation in Violation of Wis. Stat. § 134. 90)

86.     Russo Trading restates and incorporates by reference the allegations in paragraphs 1 through 85 above.

87.     Russo Trading owns and possesses valuable trade secret information regarding the operation of its business, development and manufacture of its products, the sale, distribution, pricing, costs, margin, and market for its products that provide significant actual and potential economic value to Russo Trading by not being generally known or readily ascertainable.

88.     Russo Trading has exercised reasonable efforts to safeguard and maintain the secrecy of its trade secret information, including by requiring parties interested in purchasing Russo Trading to execute commercially reasonable non-disclosure agreements before such trade secret information about Russo Trading was divulged.

89.     In 2023, QEP represented that it was interested in acquiring Russo Trading.

90.     Before Russo Trading's trade secret information was provided to QEP, QEP executed a non-disclosure agreement, namely the 2023 NDA, and, therefore, has an express duty to maintain Russo Trading's trade secrets in confidence and as secret and not use those trade secrets for any purpose other than to evaluate the potential purchase of Russo Trading.

91.     Upon information and belief, QEP did not have a genuine interest in purchasing Russo Trading and misrepresented its interest in purchasing Russo Trading to Russo Trading and its agent(s) in bad faith and with improper means to gain access to Russo Trading's trade secrets.

92.      Upon information and belief, QEP has used Russo Trading's trade secret information for its own business purposes and for its gain at Russo Trading's detriment by using such trade secrets to develop, formulate, and execute business decisions including, *inter alia*, the decisions to cease purchases of spin-type leveling devices from Russo Trading, to manufacture,

offer for sale, and sell its own spin-type leveling devices, to compete with Russo Trading and successfully replace Russo Trading as a supplier of spin-type leveling devices to one or more of Russo Trading's customers, and to infringe upon one or more of Russo Trading's patents relating to spin-type leveling devices.

93.     QEP's misappropriation of Russo Trading's trade secrets and use of those trade secrets for QEP's own business purposes has materially and substantially damaged Russo Trading, including, without limitation, through the loss of direct sales to QEP and the loss of sales to third parties that now purchase product from QEP instead of from Russo Trading.

94.     As evidenced by QEP informing Russo Trading in April 2025 of its awareness of Russo Trading's patents and intent to launch its own competing spin-type leveling system during the term of 2023 NDA, QEP's breach of the 2023 NDA and unauthorized use of Russo Trading's trade secret information was willful and deliberate.

95.     As a result of misappropriation of Russo Trading's trade secrets, Russo Trading has suffered and will continue to suffer irreparable harm and monetary damages in an amount to be determined at trial, but in no event less than its lost profits, together with interest and costs as fixed by the Court.

96.     Upon information and belief, QEP will continue to wrongly profit and be unjustly enriched from its misappropriation of Russo Trading's trade secrets unless and until it is enjoined by a court.

97.     QEP's violation of its obligation to maintain the secrecy of Russo Trading's trade secrets and not use them for its own business purposes and advantage is willful and malicious, such that Russo Trading is entitled to an award of punitive damages equal to twice Russo Trading's actual damages or the amount QEP has been unjustly enriched, whichever is greater.

<u>**FOURTH CAUSE OF ACTION**</u>
<u>**(Willful Infringement of U.S. Patent No. 9,322,185)**</u>

98.    Russo Trading restates and incorporates by reference the allegations in paragraphs 1 through 97 above.

99.    As the owner of the '185 Patent, Russo Trading is authorized and has standing to bring legal action to enforce all rights arising under the '185 Reissue Patent.

100.    QEP manufactures, uses, offers to sell, sells, and/or imports into the United States a tile lippage removal system referred to by QEP as the "Lash® 360 Tile Leveling System" (shown below), which includes a threaded cap and a threaded spacer post.



101.    QEP manufactures, uses, offers to sell, sells, and/or imports into the United States an anti-friction plate referred to by QEP as "Tile Leveling System Protection Plate" (shown below) that QEP expressly recommends for use with the "Lash® 360 Tile Leveling System."



102.    As detailed in Exhibit E, with side-by-side comparison to the limitations of Claims 1-18 of the '185 Patent, QEP's Tile Leveling System literally infringes each and every limitation of those claims, and, therefore, literally infringes each and every claim of the '185 Patent.

103.    Upon information and belief, QEP continues to make, use, sell, offer for sale and/or import its Tile Leveling System.

104.    QEP had actual knowledge of the '185 Patent at least as early as September 2021, as the parties expressly discussed a supply agreement under the 2021 NDA whereby Russo Trading would sell products embodying the '185 Patent to QEP on terms including QEP's obligation to mark such products as sold under license by Russo Trading, including under the '185 Patent. QEP had further actual knowledge of the '185 Patent no later than during 2023 when QEP sought and requested information regarding Russo Trading's intellectual property under the 2023 NDA and was provided such information. QEP's infringement of the '185 Patent is, therefore, willful.

105.    Upon information and belief, QEP will continue to infringe the '185 Patent unless and until it is enjoined by a court.

106.     As a result of QEP's infringement of the '185 Patent, Russo Trading has suffered and will continue to suffer irreparable harm and monetary damages in an amount to be determined at trial, but in no event less than a reasonable royalty, together with interest and costs as fixed by the Court.

107.     This is an exceptional case; therefore, Russo Trading should be awarded its reasonable attorney fees pursuant to 35 U.S.C. § 285.

108.     Pursuant to 35 U.S.C. § 284, Russo Trading is entitled to enhanced damages for willful infringement of the '185 Patent, up to treble damages.

## FIFTH CAUSE OF ACTION
### (Willful Infringement of U.S. Patent No. RE 46,567)

109.     Russo Trading restates and incorporates by reference the allegations in paragraphs 1 through 108 above.

110.     As the owner of the '567 Reissue Patent, Russo Trading is authorized and has standing to bring legal action to enforce all rights arising under the '567 Reissue Patent.

111.     QEP manufactures, uses, offers to sell, sells, and/or imports into the United States a tile lippage removal system referred to by QEP as the "Lash® 360 Tile Leveling System" (shown below), which includes a threaded cap and a threaded spacer post – referred to by QEP as "Tile Leveling Stems."



112. As detailed in Exhibit F, with side-by-side comparison to the claimed ornamental design of the '567 Reissue Patent, QEP's Tile Leveling Stem is substantially similar and/or identical in all material aspects to the claimed ornamental design of the '567 Reissue Patent, such that an ordinary observer of QEP's Tile Leveling Stem giving such attention as a purchaser usually gives, would find the design of the QEP's Tile Leveling Stem to be substantially the same as the claimed design of the '567 Reissue Patent and would be deceived into believing that the QEP's Tile Leveling Stem was the same as Russo Trading's patented design. QEP's making, use, offer for sale, sale of the QEP's Tile Leveling Stem, therefore, directly infringes Russo Trading's '567 Reissue Patent in violation of 35 U.S.C. § 271.

113. Upon information and belief, QEP continues to make, use, sell, offer for sale and/or import its Tile Leveling Stem.

114. QEP had actual knowledge that Russo Trading was pursuing a reissue application of U.S. Design Patent No. D 856,111 that subsequently issued as '567 Reissue Patent no later than during 2023 when QEP sought and requested information regarding Russo Trading's intellectual

property under the 2023 NDA and was provided such information. Upon information and belief, QEP has had actual knowledge of the '567 Reissue Patent at or around its date of issuance on July 4, 2023, and has had actual notice of the '567 Reissue Patent no later than on or about April 8, 2025 when QEP informed Russo Trading that it was aware of Russo Trading's patents and was proceeding with its own competing product in spite of such knowledge. QEP's infringement of the '567 Reissue Patent is, therefore, willful.

115.    Upon information and belief, QEP will continue to infringe the '567 Reissue Patent unless and until it is enjoined by a court.

116.    As a result of QEP's infringement of the '567 Reissue Patent, Russo Trading has suffered and will continue to suffer irreparable harm and monetary damages in an amount to be determined at trial, but in no event less than a reasonable royalty, together with interest and costs as fixed by the Court.

117.    This is an exceptional case; therefore, Russo Trading should be awarded its reasonable attorney fees pursuant to 35 U.S.C. § 285.

118.    Pursuant to 35 U.S.C. § 284, Russo Trading is entitled to enhanced damages for willful infringement of the '567 Reissue Patent, up to treble damages.

119.    Pursuant to 35 U.S.C. § 289, and because QEP's Tile Leveling Stem is a colorable imitation of the claimed design of the '567 Reissue Patent, Russo Trading is entitled to a disgorgement of QEP's total profits from its sales of the Lash® 360 Tile Leveling Stems.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Russo Trading Company, Inc. demands judgment against Defendant Q.E.P. Co., Inc. as follows:

A. That the Defendant and its affiliates, subsidiaries, parent companies and officers be enjoined from importing, manufacturing, using, offering for sale or selling any further

products that infringe the '185 Patent, and from engaging in acts that constitute infringement of the '185 Patent;

B. That the Defendant and its affiliates, subsidiaries, parent companies and officers be enjoined from importing, manufacturing, using, offering for sale or selling any further products that infringe the '567 Reissue Patent, and from engaging in acts that constitute infringement of the '567 Reissue Patent;

C. An award of Plaintiff's actual damages, or in the alternative a reasonable royalty;

D. An award trebling or enhancing the damages found due to Defendant's willful infringement;

E. A disgorgement and award to the Plaintiff of Defendant QEP's profits from its sale of the QEP Tile Leveling Stems pursuant to 35 U.S.C. § 289;

F. An Order enjoining Defendant from all activities relating to the manufacture, sale, offer for sale of spin-type tile leveling components based on QEP's breaches of one or both of the 2021 NDA and 2023 NDA and/or violation of Wis. Stat. § 134.90;

G. An award of Russo Trading's actual losses arising from QEP's breaches of the 2021 NDA and 2023 NDA, or in the alternative, an award no less than the amount QEP has been unjustly enriched based on its breaches of the 2021 NDA and 2023 NDA;

H. An award of Russo Trading's actual losses arising from QEP's misappropriation of Russo Trading's trade secrets in violation of Wis. Stat. § 134.90, or in the alternative, an award no less than the amount QEP has been unjustly enriched based on its misappropriation of Russo Trading's trade secrets;

I. An Order awarding Russo Trading its reasonable attorneys' fees and costs for incurred in enforcement of the 2023 NDA as authorized thereunder;

J. An Order holding that Defendant QEP's conduct, including breaches of the 2021 NDA 2023 NDA and/or violation of Wis. Stat. § 134.90 were in bad faith, willful and malicious, warranting an award of punitive damages and attorneys' fees;

K. An Order holding that Defendant QEP's conduct, including patent infringement, breach of multiple non-disclosure agreements, and trade secret misappropriation, makes this an exceptional case under 35 U.S.C. § 285, and an award of Plaintiff's costs, including attorney fees; and

L. Any and all other relief that the Court may deem proper and just.

## Jury Demand

Plaintiff Russo Trading Company, Inc. demands a jury trial for all factual issues not admitted by the Defendant.

Dated: February 10, 2026

*/s/ Jeremy Adelson*
Thomas S. Reynolds II
treynolds@hansenreynolds.com
Jeremy Adelson
jadelson@hansenreynolds.com
**HANSEN REYNOLDS LLC**
301 North Broadway, Suite 400
Milwaukee, WI 53202
Telephone: (414) 455-7676
Facsimile: (414) 273-8476

Sarah Troupis Ferguson
sferguson@hansenreynolds.com
**HANSEN REYNOLDS LLC**
25 W. Main Street, Suite 500
Madison, WI 53703
Telephone: (608) 841-1351
Facsimile: (414) 273-8476

*Attorneys for Plaintiff Russo Trading Company, Inc.*